CHARLES GILBERT et al., Appellees, v. DANIEL PLOWMAN, Appellant.

No. 42567.

OCTOBER 16, 1934.

REHEARING DENIED JANUARY 19, 1935.

Calhoun & Calhoun, for appellant.

Jo. R. Jaques, and H. B. Sloan, for appellees.

ANDERSON, J.—The plaintiffs commenced their action at law in February, 1929, alleging in their petition and amendments thereto that on or about the 1st day of January, 1929, plaintiffs were the owners of a certain described tract of land consisting of 175 acres situated in Davis county, Iowa, and that on or about said date the defendant orally agreed to pay to the plaintiffs the sum of $1,000 for their interest in said land, and plaintiffs orally agreed for said sum to transfer such interest, and that thereafter pursuant to the said oral agreement the plaintiffs did execute a deed conveying said land, and that said defendant took possession thereunder of the real estate involved; that said contract of sale was fully performed except as to the payment of the purchase price, and plain-

tiffs ask judgment against the defendant in the sum of $1,000 with interest from January 1, 1929.

After demurrers to the plaintiffs' petition were submitted and overruled, the defendant answered denying generally the allegations of plaintiffs' petition and the amendments thereto, and further states in his answer, "that said alleged contract pertains to the transfer of an interest in lands, and the same is not evidenced in writing, and signed by the party to be charged." The defendant further denies that he ever went into possession of the real estate or ever received any rents or profits therefrom, and that the plaintiffs' petition upon its face shows that the consideration for the alleged transfer has been paid in full.

The record shows that there is a sharp conflict in the testimony as to the contract declared upon by the plaintiffs. The record fairly shows that they (plaintiffs) were the owners of the land involved and that there was a mortgage thereon in the approximate sum of $8,500; that the defendant, his brother, and one Findlay were interested in said mortgage, probably as partners, but that the mortgage was held by and in the name of Findlay. The plaintiffs claim, and their testimony is to the effect, that some time in January, 1929, they wrote a letter to the defendant offering to sell their interest in the real estate for the sum of $1,000, and that shortly thereafter the defendant negotiated with the plaintiffs for the purchase and sale of their interest in said real estate; and that as a result of such negotiations the defendant promised to pay or secure the release of another mortgage and to pay to the plaintiffs the sum of $1,000 for a transfer of their interest in the land. It appears without controversy that later the defendant had prepared a warranty deed to the land involved, for the expressed consideration of $1 and other considerations, with the grantee in blank, and that he (the defendant) presented said deed to the plaintiffs and that plaintiffs executed the same, and that it was then delivered to the defendant, but that the consideration claimed by plaintiffs was not paid to them. The plaintiffs' testimony shows that the defendant did send them a release of some mortgage (the identity of which the record does not make clear), but did not pay the $1,000 purchase price agreed upon. Some ten days after the execution of the deed, the plaintiffs made a demand upon the defendant for the payment of the $1,000 through a letter written to him, and that some two or three days after the receipt of such letter the defendant called upon

the plaintiffs and attempted to redeliver the deed to them. The plaintiff Gilbert further testifies that he asked the defendant why the name of the grantee should not be placed in the deed and the defendant said that he did not know whether he or Mr. Findlay would finally get the land, that they had not settled up yet, and that there would be no use making two deeds; that is, one to the defendant and then a second one from defendant to Findlay, in the event that Findlay finally got the land.

There was a second mortgage upon the land involved exceeding $9,000, but this mortgage had been assigned to the plaintiffs and either released or a release had been executed therefor, and it apparently has nothing to do with the present controversy.

The defendant denies the making of the oral contract as alleged by plaintiffs, and denies that he ever agreed to pay $1,000 or any other sum for a transfer of plaintiffs' interest in the land in question. He claims that the conveyance was executed and delivered to him in blank for the purpose of permitting him to secure a purchaser or a trade for the land. He also says that prior to obtaining the deed from the plaintiffs he had made arrangements with a bank to purchase for $250 a certificate of sale to be issued upon the foreclosure of a third mortgage, and the record shows that some time thereafter, probably in May, the said sheriff's certificate was in fact assigned to Mr. Findlay, and that possession was taken by Mr. Findlay as receiver in said bank foreclosure case, and that never at any time did the defendant or any one else take possession of the real estate under and by virtue of the plaintiffs' conveyance. He testifies that he wanted a deed for that farm to avoid the expense of a foreclosure, and that some time after the controversy came up over the purchase price he bought the sheriff's certificate of purchase, and that later the sheriff's deed was taken in the name of George W. Findlay, and Findlay, the defendant, and his brother, were partners or interested in the $8,500 mortgage they held upon the land in question. Findlay testifies: "We had it ($8,500.00 mortgage) together, and all lost money, and we had to stand the losses—the three of us. This was one of the properties we were doing some trading with. We did not deem it ample security at the time we made the loan. We would have been ahead to foreclose in the first place on our $8,500.00 mortgage."

The foregoing discloses the material facts in the controversy as disclosed by the record. After a motion to direct a verdict for

the defendant was overruled, the issues were submitted to a jury resulting in a verdict for the plaintiffs for $1,285. Motion for a new trial and objections and exceptions to the instructions were overruled, and judgment was entered upon the verdict. The defendant appeals.

■ The appellant's principal contention is that the contract between the plaintiffs and the defendant was one within the statute of frauds and falls within the provisions of subdivision 3, section 11285 of the Code—that is, that the contract was for the creation or transfer of an interest in land and, not being in writing, evidence in reference thereto is incompetent and inadmissible. Appellant argues that the execution and delivery of the warranty deed by the plaintiffs was not a performance or a part performance of the contract, principally for the reason that no grantee was named therein and for the further reason that possession was not taken by the defendant under and by virtue of such deed. We think, whether the appellant did take possession of the real estate involved, after the execution and delivery of the deed in question, is not material, if the contract was fully performed on the part of the plaintiffs by the execution and delivery of the deed. If the deed was valid, it transferred and conveyed all interest in the real estate therein described to the defendant, and he thereby acquired the right to the possession of the described premises. The defendant denies that he ever took possession and says that Findlay took possession as a receiver in the foreclosure proceedings of the third mortgage, but Findlay was not appointed such receiver until about two months after the execution and delivery of the deed in question, and during such interim some one other than the plaintiffs certainly had the right to the possession of the premises if the deed in question transferred and conveyed the plaintiffs' title.

The appellant concedes that our court has held that the equitable title to real estate passes by the delivery of a deed in blank as to the name of the grantee, who is a purchaser for a valuable consideration, but that defendant was not a purchaser for a valuable consideration, and therefore the deed in question conveyed no title and created no rights in the defendant. The appellant cites cases from South Dakota, Minnesota, and Wisconsin, to the effect that a deed executed and acknowledged by the grantor with the name of the grantee left blank is invalid, but such is not the rule in this state. It has long been held in this state that authority to a grantee

to fill a blank in a deed is implied when the grantor delivers the deed fully executed in other respects. In Hall v. Kary, 133 Iowa 465, 110 N. W. 930, 119 Am. St. Rep. 639, we said:

"It must be presumed that, although plaintiff's deed was blank as to grantee, the intention was to vest Chamberlain with title to the property described therein, and authorize him to insert the name of a grantee as he should see fit. That a deed thus left blank as to the grantee, being otherwise fully executed, vests title in the person whose name is subsequently inserted therein by the one to whom it is delivered as a conveyance is well settled in this state. Swartz v. Ballou, 47 Iowa 188, 29 Am. Rep. 470; Logan v. Miller, 106 Iowa 511, 76 N. W. 1005; McClain v. McClain, 52 Iowa 272, 3 N. W. 60; McCleery v. Wakefield, 76 Iowa 529, 41 N. W. 210, 2 L. R. A. 529."

And in Augustine v. Schmitz, 145 Iowa 591, 124 N. W. 607, we said:

"Assuming, as we think the record compels us to do, that the deed was delivered to Pope in blank as to the grantee, then under the established rule of this court Pope had authority to fill it out in his own name or in the name of his grantee or purchaser."

It must be held, under an abundance of authority in this state, that the warranty deed executed by the plaintiffs and delivered to the defendant was valid and transferred and conveyed all the interest and title of the plaintiffs in the property therein described. This being true, the statute of frauds has no application to the determination of the instant case. This must be true because the plaintiffs performed every act that was required of them in the consummation of the contract, and the only question remaining is necessarily the fact question as to the consideration which defendant agreed to pay, if any, for such conveyance.

Our statute of frauds does not make contracts falling within its provisions void, but only provides that evidence of such contract is incompetent. And it also contains an exception, to the effect that it does not apply where the purchase money or any part thereof has been paid, or where possession of the premises has been taken by virtue of the contract, or where there is any other circumstance which by the law heretofore in force would have taken the case out of the statute of frauds. And cases of other states decided upon

statutes declaring such contracts absolutely void are not pertinent and furnish no authority for the construction of our own statute.

Section 429, on page 347 of vol. 27, C. J., has this to say in reference to the sufficiency of part performance to take a contract out of the statute of frauds:

"Some statutes expressly provide that specified acts of part performance shall exclude the case from the statutory requirement of a writing, and under such statutes, of course, where the specified acts have been performed, the statute has no application."

In the same volume and on page 349, section 430, dealing with the performance by one party says:

"The great weight of authority supports the rule that the statute of frauds has no application where there has been a full and complete performance of the contract by one of the contracting parties, and the party so performing may sue upon the contract in a court of law. * * * Particularly is this said to be true where the agreement has been completely performed as to the part thereof which comes within the provisions of the statute, and the part remaining to be performed is merely the payment of money, or the performance of some act, the promise to do which is not required to be put in writing."

Our own cases fully sustain the above quoted text. See Trayer v. Reeder, 45 Iowa 272; Puttman v. Haltey, 24 Iowa 425; Murphy v. De Haan, 116 Iowa 61, 89 N. W. 100; Evans v. McKanna, 89 Iowa 362, 56 N. W. 527; Dorr Cattle Co. v. National Bank, 127 Iowa 153, 98 N. W. 918, 102 N. W. 836, 4 Ann. Cas. 519; Yule v. Fell, 123 Iowa 662, 99 N. W. 559, 560; Chehak v. Battles, 133 Iowa 107, 110 N. W. 330, 8 L. R. A. (N. S.) 1130, 12 Ann. Cas. 140.

In Yule v. Fell, supra, we said:

"It is true, the contract was oral, but there has been a part performance, which, as is well understood, avoids the effect of the statute."

In Murphy v. De Haan, supra, we said:

"Contracts within the statute are not void, and, if performed or partly performed, they are, to the extent of such performance, taken out of the statute. When executed, or so far as executed, such contracts are valid, and as binding as if they had been in writing."

The appellant also contends that the consideration named in the deed is conclusive and shows that the consideration for its execution and delivery was fully paid. There is no merit in such contention. We have held that the consideration clause is not conclusive evidence that the money has been paid, and only prima facie evidence of the amount, which may by parol proof be shown to be greater or less than that shown in the deed. Trayer v. Reeder, 45 Iowa 272; Harper v. Perry, 28 Iowa 57. In the Trayer case we said:

"And it has also been held, and such seems the prevailing rule, that a consideration dehors the deed may be proved unless such consideration is repugnant to the deed."

Complaint is lodged against the instructions of the court. First, that the court did not submit the question as to whether or not the defendant took possession of the premises under his deed. There was no sufficient evidence upon which the court could submit this question to the jury and the issue was properly omitted from the instructions.

The appellant further complains that the court erred in instruction 4, in assuming that a deed with the name of the grantee left in blank conveys the property mentioned in said deed; appellant contending that such is not the rule. There is no merit in such contention.

The court instructed the jury that in order to recover the plaintiffs must establish by a preponderance of the evidence: (1) that they were the owners of the 175-acre farm; (2) that the defendant agreed to pay them the sum of $1,000 for their interest in said farm; (3) that the plaintiffs executed a deed to the defendant for said farm; (4) that the defendant has not paid the said sum of $1,000. We have carefully read the instructions of the court and are constrained to hold that the questions and issues involved in the controversy were fairly and fully submitted to the jury, and there is no indication that the jury failed to follow such instructions.

We find no error in the record either in overruling defendant's motions for directed verdict or his motion for a new trial. An affirmance necessarily follows.—Affirmed.

MITCHELL, C. J., and STEVENS, CLAUSSEN, and KINTZINGER, JJ., concur.